**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JANE DOE, on behalf of herself,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS"); KRISTI NOEM, in her official capacity as Secretary of the DHS; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); JOSEPH B. EDLOW, in his official capacity as Director of USCIS; UNITED STATES DEPARTMENT OF STATE ("DOS"); MARCO RUBIO, in his official capacity as Secretary of State; U.S. EMBASSY ANKARA, TURKEY ("Embassy"); MICHAEL LALLY, in his official capacity as Consul General for U.S. Embassy Ankara, Turkey; PAM BONDI, in her official capacity as Attorney General; OFFICE OF IMMIGRATION LITIGATION ("OIL"); and DREW ENSIGN, in his official capacity as Deputy Assistant Attorney General Office of Immigration Litigation,<br><br>Defendants.<br>. | Case No: 2:26-cv-00080<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT
Case No: 2:26-cv-00080         Page 1 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA  98108
(206) 357-4218

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff Jane Doe ("Jane") is a naturalized United States citizen. Jane challenges the Defendants' use of a secret, undefined "terrorism" imputation to cast doubt on the security of her own citizenship and to impose present, concrete burdens on her as a U.S. citizen.

2. Defendants have labeled Jane's husband a "terrorist" without disclosing what that label means, what conduct it is based on, or what organization is allegedly involved. That label is not merely an immigration determination affecting John, it is a domestic legal weapon now aimed at Jane. Under the June 2025 Shumate Memorandum, cases with a "nexus to terrorism" are the top priority for denaturalization. Jane's case fits that description precisely. EXHIBIT A, Brett A. Shumate, Assistant Att'y Gen., Civil Div., U.S. Dep't of Just., *Memorandum on Civil Division Enforcement Priorities* (June 11, 2025)

3. The injury Jane suffers is not speculative. The Shumate Memorandum, combined with internal Administration guidance directing agencies to identify and refer 100-200 naturalized citizens for denaturalization per month, materially increases the probability that Jane will be investigated, referred, and subjected to denaturalization proceedings. Denaturalization is a civil action that could strip her of citizenship based on "clear, unequivocal, and convincing" evidence. *Schneiderman v. United States*, 320 U.S. 118, 125 (1943). This threat forces Jane into immediate self-censorship and life alteration: she must choose between supporting her husband and protecting her citizenship, without any clarity about what conduct is actually prohibited. EXHIBIT B, Jane Doe's Declaration.

4. Jane challenges Defendants' use of a secret terrorism label to impose domestic consequences on a U.S. citizen, which has placed her in a priority denaturalization category, stigmatized her in government records, and chilled her protected associational and expressive conduct, without constitutionally adequate notice or process.

5. Jane's injury is present, concrete, and independently cognizable. She has been forced to proceed under a pseudonym due to well-founded fears that disclosure of her identity would trigger the very enforcement she seeks to challenge. She has altered her travel, employment,

COMPLAINT
Case No: 2:26-cv-00080   Page 2 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

and family support decisions. She lives under the shadow of a label she cannot see, based on allegations she cannot answer, subject to consequences she cannot predict.

6. Jane seeks declaratory and injunctive relief focused on her citizenship status and the domestic use of government records. Jane alternatively seeks as remedy declaratory relief holding that the application of the terrorist-related inadmissibility grounds (INA § 212(a)(3)(B), 8 U.S.C. § 1182(a)(3)(B))  further seeks a finding that the finding that her husband, John Doe, is a terrorist or involved in terrorist activities is unconstitutionally vague and overbroad.

## I. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1361 (mandamus), 28 U.S.C. §§ 2201-2202 (declaratory judgment), and 5 U.S.C. §§ 555(b), 702, 704, and 706 (Administrative Procedure Act).

8. Venue is proper under 28 U.S.C. §§ 1391(b) and 1391(e) because Plaintiff resides in this district and Defendants are sued in their official capacities.

## II. STANDING AND JUSTICIABILITY

9. Jane has Article III standing because she suffers a concrete, particularized, and actual injury that is fairly traceable to Defendants' conduct and redressable by this Court.

10. Jane's injury satisfies the "stigma-plus" framework recognized in *Paul v. Davis*, 424 U.S. 693 (1976), and its progeny. The "stigma" is Defendants' imputation that Jane is terrorism-adjacent or involved in terrorist activities by virtue of her marriage to a person the Defendants have labeled a terrorist. The "plus" is not merely emotional distress but a constellation of present, legally cognizable burdens:

   a. *Credible denaturalization targeting:* Jane falls squarely within the Priority Category 1 of the Shumate Memorandum ("cases with a nexus to terrorism"). Internal Administration guidance directs agencies to identify and refer 100-200 potential denaturalization cases per month, creating institutional pressure to find cases matching the priority categories. This materially increases the probability that Jane will be investigated, referred, and

COMPLAINT
Case No: 2:26-cv-00080      Page 3 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA  98108
(206) 357-4218

subjected to civil litigation that could strip her citizenship, a proceeding in which the Government must prove its case by "clear, unequivocal, and convincing" evidence. *Schneiderman*, 320 U.S. at 125. Civil denaturalization has no statute of limitations; the Government may bring such proceedings at any time. The threat to Jane's citizenship is therefore imminent and structurally perpetual.

b. *Forced pseudonymity and litigation burden:* Jane has been compelled to litigate under a pseudonym and to seek extraordinary protective measures because disclosure of her identity to Defendants' enforcement components would likely trigger the very investigation she challenges. This is itself a tangible, government-imposed burden on her access to courts and her ability to vindicate her rights publicly: a concrete present injury, not mere self-censorship.

c. *Chilled protected conduct:* Jane has previously engaged in travel to visit, communication with, and financial support of her husband. In response to the threat of denaturalization, she has curtailed her travel to visit her husband, limited her financial support, and self-censored her communications, because she cannot determine what conduct might be characterized as "material support for terrorism" or as a "nexus to terrorism" triggering denaturalization referral. This chilling effect burdens her First Amendment rights to intimate association (marriage) and expressive association.

d. *Record-based disability:* Upon information and belief, Defendants maintain records describing Jane as terrorism-associated or as a potential denaturalization target. These records constitute a government-imposed legal disability, not a subjective response to fear. The records mark Jane for priority enforcement treatment under the Shumate Memorandum, affect how agencies process her interactions, and place her citizenship in perpetual jeopardy. Unlike voluntary behavioral changes, this classification exists in government systems and operates against Jane regardless of her own choices. Jane has no means to access, review, or challenge these records without triggering the enforcement action she fears.

COMPLAINT
Case No: 2:26-cv-00080                                   Page 4 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

11. Jane's claims are ripe because the injury is present and ongoing, not contingent on future denaturalization proceedings. Courts have recognized that pre-enforcement challenges are cognizable where, as here, the plaintiff faces "a credible threat of prosecution" or enforcement that chills present conduct. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014). Jane need not wait to be denaturalized to challenge the unconstitutional process that has already imposed domestic burdens on her citizenship.

12. Jane's injury is continuing. Defendants' maintenance and operational use of the undisclosed terrorism imputation continues daily. The 2025 enforcement prioritization newly operationalizes this imputation by placing Jane in the top denaturalization target category. Even if the original TRIG determination occurred on January 8, 2020, the domestic legal disability it creates is perpetuated each day Defendants maintain it in their systems without process, and was materially transformed when the Shumate Memorandum made a "terrorism nexus" the top denaturalization priority. Jane's claims therefore accrue from the ongoing deprivation, not solely from the date of the original visa refusal.

## III. PARTIES

13. Plaintiff JANE DOE is a naturalized citizen of the United States residing in King County, Washington. She proceeds under a pseudonym due to well-founded fears that disclosure would trigger an enforcement action by the Defendants.

14. Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") is the cabinet department of the United States federal government responsible for immigration-related services including naturalization and related investigations.

15. Defendant KRISTI NOEM is sued in her official capacity as Secretary of the DHS. She oversees all of its operations and has supervisory responsibility over its agencies, including USCIS, Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), Transportation Security Administration ("TSA"), and other entities.

16. Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is an agency of DHS and is responsible for overseeing the adjudication of immigration

COMPLAINT
Case No: 2:26-cv-00080                    Page 5 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

benefits, including naturalization. USCIS implements federal law and policy with respect to immigration benefits applications.

17. Defendant JOSEPH B. EDLOW is sued in his official capacity as the Director of USCIS. He oversees all of its operations.

18. Defendant UNITED STATES DEPARTMENT OF STATE ("DOS") is the cabinet department of the United States federal government responsible for most overseas immigration-related services, including visa adjudication and terrorist activity determinations, and stores records related to those adjudications.

19. Defendant MARCO RUBIO is sued in his official capacity as Secretary of State. He oversees all of its operations and has a supervisory responsibility over its consulates.

20. Defendant U.S. EMBASSY ANKARA, TÜRKİYE ("Embassy") is the consular post that adjudicated Plaintiff John Doe's visa application. Its consular officer was responsible for the determination that Plaintiff John Doe was inadmissible to the United States for terrorist activities.

21. Defendant MICHAEL LALLY is sued in his official capacity as the Consul General for the U.S. Embassy in Ankara, Türkiye. He is the official responsible for overseeing the adjudication of visas at that embassy and its storage of records.

22. Defendant PAM BONDI is sued in her official capacity as Attorney General of the United States. She is the official responsible for overseeing federal investigation and enforcing laws, including denaturalization proceedings, at the Department of Justice.

23. Defendant OFFICE OF IMMIGRATION LITIGATION ("OIL") is the Department of Justice office that oversees all immigration litigation, including national security litigation and denaturalization.

24. Defendant DREW ENSIGH is sued in his official capacity as the Deputy Assistant Attorney General for the Office of Immigration Litigation. He is the official responsible for overseeing OIL's litigation, including national security and denaturalization cases.

COMPLAINT
Case No: 2:26-cv-00080        Page 6 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

### IV. CITIZENSHIP AND DENATURALIZATION STANDARDS

25. "Citizenship is no light trifle to be jeopardized any moment". *Afroyim v. Rusk*, 387 U.S. 253, 267-68 (1967). Once conferred, citizenship cannot be taken away except through the citizen's own voluntary renunciation or through denaturalization proceedings meeting exacting standards.

26. In civil denaturalization, the Government bears the burden of proving its case by "clear, unequivocal, and convincing" evidence that "does not leave the issue in doubt." *Schneiderman*, 320 U.S. at 125 (1943). Courts should construe "the facts and the law . . . as far as is reasonably possible in favor of the citizen." *Id*. at 122.

27. The gravity of the proceeding, stripping a person of "all that makes life worth living," demands rigorous procedural protections. *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).

28. "[D]iscrimination aimed at naturalized citizens drastically limits their rights to live and work abroad in a way that other citizens may. It creates indeed a second-class citizenship." *Schneider v. Rusk*, 377 U.S. 163, 168-69 (1964). While Congress may constitutionally provide for denaturalization based on illegal procurement or concealment of material facts, Defendants may not treat naturalized citizens as holding perpetually contingent citizenship through secret, unchallengeable "terrorism nexus" imputations that operationally degrade their status in daily life. Once citizenship is conferred, a naturalized citizen "becomes a member of the society, possessing all the rights of a native citizen." *Osborn v. Bank of the United States*, 22 U.S. 738, 827 (1824). Within five years of naturalizing, a person who becomes affiliated with an organization that would have precluded naturalization may be denaturalized using the affiliation as *prima facie* evidence that the person was not attached to the principles of the Constitution of the United States. 8 U.S.C. § 1451(c).

### V. TERRORISM-RELATED INADMISSIBILITY GROUNDS ("TRIG")

29. The Terrorism-Related Inadmissibility Grounds ("TRIG"), codified at 8 U.S.C. § 1182(a)(3)(B), establish an exceptionally broad set of inadmissibility provisions that fail to provide clear notice of the conduct, associations, or mental states that render a noncitizen inadmissible.

COMPLAINT
Case No: 2:26-cv-00080                Page 7 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

30. TRIG defines a "terrorist organization" to include any "group of two or more individuals, whether organized or not, which engages in" terrorist activity. 8 U.S.C. § 1182(a)(3)(B)(vi)(III). This definition is untethered from any public designation, list, or advance governmental determination and provides no way for an individual to know, *ex ante*, whether a particular group falls within the statute.

31. Unlike formally designated terrorist organizations, entities deemed terrorist under § 1182(a)(3)(B)(vi)(III) are identified only retrospectively, through case-by-case adjudication, based on alleged conduct. As a result, individuals cannot determine in advance whether their interactions involve a "terrorist organization" as defined by TRIG.

32. TRIG further defines disqualifying acts where an individual may "engage in terrorist activity" to include expansive concepts such as "material support," "association," or acting "on behalf of" a group, without requiring intent to further terrorism, agreement with any ideology, or knowledge that the conduct was unlawful.

33. When an individual is informed only that they are inadmissible under § 1182(a)(3)(B), that notice does not identify which subsection applies, what organization is at issue, what conduct is alleged to be disqualifying, or whether the alleged basis rests on past conduct, present association, or speculative future conduct.

34. Because § 1182(a)(3)(B) contains numerous cross-referenced subclauses and nested definitions, a generalized citation to the statute leaves the individual unable to understand what they are alleged to have done, failed to do, or intended to do that renders them inadmissible.

35. Although Congress included provisions allowing individuals to demonstrate that they "did not know, and should not reasonably have known," that an organization was terrorist in nature, these provisions place the burden on the individual to disprove knowledge of an indeterminate status that could not have been known in advance without having received information to allow them to analyze their own knowledge. *See* 8 U.S.C. §§ 1182(a)(3)(B)(i)(VI), (iv)(IV)(cc), (iv)(V)(cc), (iv)(VI)(dd).

COMPLAINT
Case No: 2:26-cv-00080                    Page 8 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

36. TRIG further extends inadmissibility to spouses and children of individuals deemed inadmissible under § 1182(a)(3)(B), unless they can establish lack of knowledge, thereby imposing derivative consequences without requiring personal conduct, intent, or affiliation. See 8 U.S.C. § 1182(a)(3)(B)(i)(IX), (ii)(I).

37. Taken together, TRIG fails to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited or how to conform their behavior to the law, rendering it impermissibly vague as applied where inadmissibility is asserted solely under § 1182(a)(3)(B) without further specification.

38. Congress created a statutory mechanism to allow individuals accused of providing material support or solicitation associated with terrorist activity an opportunity to respond and challenge the determination. §§ 1182(a)(3)(B)(iv)(IV)(cc), (iv)(V)(cc), (iv)(VI)(cc) ("demonstrate . . . that he did not know, and should not reasonably have known, that the organization was a terrorist organization").

39. Defendants have demonstrated through their consistent practices that a policy, directive, or entrenched informal practice exists under which the Department of State, its consulates, and its consular officers never, or virtually never, solicit or permit visa applicants found inadmissible under § 1182(a)(3)(B) to invoke the statutory demonstration clauses designed to establish lack of knowledge of terrorist activity. As implemented, this practice categorically forecloses applicants and their naturalized citizen family members from responding to or rebutting allegations that they are, have been, or intend to be involved with a terrorist organization, thereby nullifying the statutory opportunity Congress expressly created and depriving affected individuals of any meaningful chance to contest the factual basis of the terrorism-related inadmissibility determination.

**VI. THE 2025 SHUMATE MEMO AND DENATURALIZATION TARGETING**

40. On June 11, 2025, Assistant Attorney General Brett A. Shumate issued a memorandum to all Department of Justice Civil Division employees establishing "Civil Division Enforcement Priorities." EXHIBIT A.

COMPLAINT
Case No: 2:26-cv-00080                    Page 9 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

41. Section 5, titled "Prioritizing Denaturalization," directs the Civil Division to "prioritize and maximally pursue denaturalization proceedings in all cases permitted by law and supported by the evidence." *Id*.

42. Priority Category 1 is "[c]ases against individuals who pose a potential danger to national security, including those with a nexus to terrorism, espionage, or the unlawful export from the United States of sensitive goods, technology, or information." *Id*.

43. The Justice Manual (JM 4-7.200), updated in October 2024 and pending further guidance, describes an Enforcement Unit within the Office of Immigration Litigation's General Litigation and Appeals Section with "principal Departmental authority to coordinate and handle affirmative civil denaturalization litigation." EXHIBIT C, U.S. Dep't of Just., Justice Manual tit. 4, § 4-7.200 (rev. Oct. 2024). The Manual repeats the "terrorism nexus" prioritization and describes the referral pipeline by which USCIS and other agencies transmit potential denaturalization cases to DOJ. The Manual expressly disclaims creation of enforceable rights, but it demonstrates the institutional capacity and operational infrastructure for denaturalization targeting.

44. In December 2025, news organizations reported that the Administration had circulated internal guidance directing agencies to identify and refer 100-200 potential denaturalization cases per month for 2026. EXHIBIT D, Matthew Cullen, *The U.S. Seeks to Increase Denaturalizations*, N.Y. Times (Evening Newsletter), Dec. 17, 2025. This represents a dramatic escalation: approximately 170 total denaturalization cases were filed since 2017.

45. The Department of Justice has publicly stated that civil denaturalization proceedings have no statute of limitations. EXHIBIT E, Press Release No. 20-231, U.S. Dep't of Just., *Department of Justice Creates Section Dedicated to Denaturalization Cases* (Feb. 26, 2020). This structural feature means that any person who falls within the Government's denaturalization priorities faces a perpetual threat that the Government may at any time initiate proceedings to strip their citizenship.

COMPLAINT
Case No: 2:26-cv-00080    Page 10 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

46. The Shumate Memorandum and case referral guidance demonstrate that the "terrorism" label attached to Jane's household materially increases the probability of enforcement against her personally.

## VII. FACTUAL BACKGROUND

47. Jane was born in Iran as a member of the Bahá'í Faith, a persecuted religious minority.
48. In 2012, Jane and her parents fled Iran and entered Turkey (now Türkiye) as refugees.
49. Jane was admitted to the United States as a refugee in 2014.
50. Jane applied for naturalization when she became eligible.
51. During her naturalization examination, the officer questioned her extensively about her husband John, his history, and affiliations, questions she could not fully answer because she did not know the context of the questions being asked.
52. Jane was naturalized as a United States citizen in 2021.
53. Jane met John Doe in Türkiye and married him in 2015. John is also Iranian.
54. Jane filed an I-130 petition; USCIS approved it.
55. John was interviewed at the Embassy in October 2017. His visa was held without decision during the first travel ban on Iranian nationals.
56. In 2020, the Embassy refused John's visa under "Section 212(a)(3)(B)" (8 U.S.C. § 1182), the terrorism-related inadmissibility grounds, and marked "no waiver available." EXHIBIT F, OF-194 Refusal Worksheet (redacted to protect plaintiff).
57. The Embassy provided no explanation of what conduct, organization, or evidence supported the TRIG determination. The refusal notice (Form OF-194) cited only the statutory section.
58. Neither Jane nor John has ever been told the basis for the "terrorism" finding.
59. Neither was offered the statutory opportunity to demonstrate lack of knowledge under the demonstration clauses.
60. Jane provides living expenses to John and travels to Türkiye to maintain her marriage.

COMPLAINT
Case No: 2:26-cv-00080    Page 11 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

61. Jane fears that her spousal support constitutes "material support for terrorism" under 18 U.S.C. §§ 2339A-B, but cannot determine whether this is so because she does not know what "terrorism" is alleged.

62. Jane fears denaturalization under the Shumate Memorandum's "nexus to terrorism" priority, but cannot conform her conduct to avoid triggering investigation because she does not know what conduct is disqualifying.

63. Jane fears denaturalization due to being affiliated with her husband who the Defendants have alleged has been, may be, or intends to be involved in terrorist activity, which may include affiliation or membership in an organization described in 8 U.S.C. § 1424.

64. Following the June 2025 denaturalization prioritization memorandum and the December 2025 reports of case-referral targets, Jane has materially altered her behavior: she has curtailed her travel to Türkiye, reduced the frequency and amount of financial support she provides to John, changed her communication practices, and refrained from public advocacy on immigration issues affecting her community. All out of fear that any of these activities could be characterized as evidence of "terrorism nexus."

65. Jane has been forced to litigate under a pseudonym and to seek extraordinary protective measures, imposing tangible costs on her ability to vindicate her rights.

66. Upon information and belief, Defendants maintain records describing Jane or her household as terrorism-associated. These records impose a continuing legal disability: they mark Jane as a Priority Category 1 denaturalization target under the Shumate Memorandum, affect how government agencies process her interactions, and place her citizenship in perpetual jeopardy. Jane has no means to access, review, or challenge these records through normal administrative channels without triggering the very enforcement action she fears. This disability is ongoing and was materially transformed by the 2025 enforcement prioritization.

// (continued next page0

COMPLAINT
Case No: 2:26-cv-00080    Page 12 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

## VIII. CAUSES OF ACTION

**COUNT ONE: Fifth Amendment Procedural Due Process (Citizenship Security)**

67. The Fifth Amendment prohibits the Government from depriving any person of "life, liberty, or property, without due process of law." Citizenship is a precious right whose deprivation is "more serious than a taking of one's property." *Schneiderman*, 320 U.S. at 122 (1943). A naturalized citizen, once admitted, "becomes a member of the society, possessing all the rights of a native citizen." *Osborn*, 22 U.S. at 827; *see also Schneider*, 377 U.S. at 168-69 (1964) (rejecting premise that naturalized citizens hold second-class status).

68. Jane has a protected liberty interest in the security of her citizenship, not merely in the absence of a denaturalization judgment, but in freedom from Government action that casts a cloud over her citizenship status without adequate process.

69. Jane asserts her independent and fundamental interest in her own United States citizenship. Defendants' determination that John is a "terrorist" is not merely an immigration classification affecting him; it is the factual predicate upon which Defendants place Jane's citizenship in legal jeopardy pursuant to the Shumate Memorandum's prioritization of cases alleged to have a "nexus to terrorism."

70. The resulting constitutional injury is domestic and direct. Defendants have employed a secret and undefined terrorism designation to expose Jane to potential denaturalization, impose record-based legal disabilities, and chill her constitutionally protected conduct.

71. Defendants have violated Jane's procedural due process rights by: (a) failing to provide notice of the specific allegations, organization, or conduct underlying the terrorism-related determination; (b) failing to provide any opportunity to respond or be heard; (c) categorically refusing to honor the statutory demonstration clauses Congress enacted to protect individuals who did not know, and could not reasonably have known, that an organization was terrorist in nature; (d) maintaining stigmatizing records that associate Jane with terrorism and designate her as a denaturalization target without any process to challenge or correct those records; and (e) placing her under an ongoing threat of denaturalization investigation without any mechanism to resolve her status.

COMPLAINT
Case No: 2:26-cv-00080        Page 13 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

72. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Court weighs three factors to determine what process is due: (1) the private interest affected; (2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the Government's interest.
    a. *Private interest:* Jane's interest is among the weightiest the Constitution recognizes: the security of her citizenship and her ability to live as a citizen without self-censorship or perpetual fear of denaturalization. *See Ng Fung Ho*, 259 U.S. at 284 (citizenship is "all that makes life worth living").
    b. *Risk of erroneous deprivation:* The risk is extremely high when the Government refuses to identify the factual basis for the terrorism imputation and refuses to provide any opportunity to invoke the statutory demonstration clauses. Jane cannot contest what she does not know. An unclassified summary and opportunity to respond would dramatically reduce the risk of error.
    c. *Government interest:* The Government's interest in protecting classified sources and methods can be protected through tailored procedures (unclassified summaries, substitutions, in camera review for genuinely classified material) that provide meaningful notice without compromising national security. Courts routinely accommodate such interests in other national-security-adjacent contexts.
73. In this case, and as alleged above, Defendants impose domestic legal disabilities based on undisclosed terrorism-related determinations while providing no notice of the factual basis for those determinations and no opportunity to respond. Courts have recognized that when the Government imposes domestic disabilities based on terrorism-related designations, due process requires some mechanism for notice and redress, even in the national security context. *See, e.g., Latif v. Holder*, 28 F. Supp. 3d 1134, 1162 (D. Or. 2014) (holding that no-fly list procedures violated due process because they provided no meaningful notice or opportunity to respond); *Ibrahim v. DHS*, 669 F.3d 983, 997 (9th Cir. 2012) (recognizing cognizable liberty interest in being free from erroneous government terrorism designations). The procedures ordered in such cases, unclassified summaries of reasons, opportunity to

COMPLAINT
Case No: 2:26-cv-00080    Page 14 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

submit evidence, and in camera review of classified material, demonstrate that administrable remedies exist that protect both individual rights and national security interests.

74. The balance of factors overwhelmingly favors providing Jane with constitutionally adequate process before domestic legal disabilities are imposed based on the terrorism imputation.

75. Jane has suffered and continues to suffer irreparable harm.

**COUNT TWO: Fifth Amendment Due Process—Void for Vagueness (As Applied)**

76. The Due Process Clause requires that laws provide fair notice of what conduct is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

77. The definition of "undesignated terrorist organization" under 8 U.S.C. § 1182(a)(3)(B)(vi)(III), any "group of two or more individuals, whether organized or not", provides no advance notice of what organizations are covered.

78. Congress attempted to cure this vagueness through the "demonstration clauses" allowing individuals to prove they did not know an organization was terrorist. These clauses were designed as a safe harbor: if you can prove you did not have knowledge, you are not inadmissible. But Defendants have rendered this safe harbor illusory by categorically refusing to provide any opportunity to invoke it.

79. Defendants' policy and practice is to: (a) refuse to identify the organization at issue; (b) refuse to identify the conduct alleged; (c) refuse to solicit any demonstration of lack of knowledge; and (d) refuse to consider any evidence. When a statute says "you are safe if you prove X" but the Government never lets you prove X, the law provides no safe harbor.

80. As applied to Jane, TRIG is unconstitutionally vague because: (a) she has not been told what organization is at issue; (b) she has not been told what conduct is attributed to her household; (c) ordinary spousal support could potentially constitute prohibited "material support"; (d) she cannot conform her conduct to avoid liability; and (e) the statutory mechanism designed

COMPLAINT
Case No: 2:26-cv-00080                          Page 15 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

to provide fair notice, the demonstration clause, has been nullified by Defendants' categorical refusal to honor it.

81. A statute that is unconstitutionally vague may be saved by a limiting construction or exception. But where the Government renders that exception meaningless through non-application, the statute remains unconstitutionally vague as applied.

82. Jane is entitled to a declaration that TRIG is unconstitutionally vague.

**COUNT THREE: First Amendment—Chilled Association**

83. The First Amendment protects the right to freedom of association, including "intimate association" such as marriage. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).

84. Defendants' actions chill Jane's protected associational conduct. She has curtailed travel to visit her husband. She has limited financial support. She has self-censored communications. She has avoided public advocacy. All of this is because she cannot determine what conduct might be characterized as "nexus to terrorism" triggering denaturalization investigation.

85. The chilling effect is not speculative. The Shumate Memorandum identifies "terrorism nexus" as the top denaturalization priority. Jane's marriage to a person labeled "terrorist" places her squarely in that category. The threat of enforcement is credible and present, and it forces Jane to choose between her constitutional right to maintain her marriage and her citizenship.

86. Jane has suffered and continues to suffer irreparable harm to her First Amendment rights.

**COUNT FOUR: Ultra Vires Agency Action / APA—Contrary to Law**

87. Defendants USCIS, DHS, DOJ, and the OIL Enforcement Unit maintain and operationalize records describing Jane as terrorism-associated for purposes of denaturalization targeting. This domestic use of a terrorism imputation to impose legal disabilities on a U.S. citizen constitutes discrete agency action subject to judicial review under 5 U.S.C. § 702 (waiving sovereign immunity for non-monetary relief against agencies) and 28 U.S.C. § 1331.

COMPLAINT
Case No: 2:26-cv-00080    Page 16 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

88. Defendants act *ultra vires* when they operationalize TRIG determinations domestically against U.S. citizens while categorically refusing to provide any mechanism for contesting the underlying designation. Congress built the demonstration clauses into TRIG precisely because the "undesignated terrorist organization" definition otherwise provides no advance notice of coverage. By treating the terrorism imputation as conclusive for domestic purposes while denying any opportunity to invoke the statutory safe harbor, Defendants exceed the authority Congress granted.

89. Alternatively, under 5 U.S.C. § 706(2)(A) and (C), the Court should hold unlawful and set aside agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." Defendants' policy of operationalizing TRIG determinations domestically while categorically refusing to honor the demonstration clauses is contrary to the statutory scheme Congress enacted.

90. Jane is entitled to a declaration that Defendants' practice is *ultra vires* and contrary to law.

**COUNT FIVE: Declaratory Judgment (28 U.S.C. §§ 2201-2202)**

91. An actual controversy exists between Jane and Defendants regarding: (a) whether Defendants may impose domestic legal consequences on a U.S. citizen based on a secret "terrorism" imputation without constitutionally adequate notice and process; (b) whether due process requires a functionally adequate opportunity to contest terrorism-related designations before they may be operationalized domestically against a citizen; (c) whether Defendants may treat ordinary spousal support as evidence of "terrorism nexus" for denaturalization purposes absent specific notice of prohibited conduct; and (d) whether Defendants may maintain and operationalize records stigmatizing Jane as terrorism-associated without providing any process by which she can challenge such records.

92. Jane is entitled to a declaration resolving these controversies.

// (continued on next page)

COMPLAINT
Case No: 2:26-cv-00080   Page 17 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Declare that Defendants may not impose domestic legal consequences on a U.S. citizen, including initiating or referring denaturalization proceedings, maintaining stigmatizing records, or treating her as terrorism-associated in government systems, based on an undisclosed, undefined "terrorism" imputation, without providing constitutionally adequate notice and an opportunity to respond at the time the original allegation of terrorist activities is made;

C. Declare that before Defendants may operationalize a TRIG-based "terrorism nexus" imputation as a predicate for domestic citizenship-stripping targeting, due process requires a constitutionally adequate, functionally equivalent opportunity to contest the alleged basis, consistent with the safe-harbor structure Congress created in 8 U.S.C. § 1182(a)(3)(B);

D. Declare that Defendants may not treat Plaintiff's past and ongoing provision of ordinary living expenses to her husband as evidence of "terrorism nexus," concealment, or lack of good moral character for denaturalization purposes under 8 U.S.C. § 1451, given Defendants' failure to provide notice of any specific terrorist activity, organization, or conduct that would make such support a basis for citizenship revocation;

E. Declare that Defendants may not maintain or operationalize records describing Plaintiff as terrorism-related, terrorism-adjacent, or as a denaturalization target without providing constitutionally adequate notice and an opportunity to challenge or respond to such designation;

F. Enjoin Defendants from using an undisclosed TRIG-based "terrorism nexus" designation as the basis for initiating, referring, or recommending denaturalization proceedings against Plaintiff unless and until Defendants have: (a) provided Plaintiff with notice of the TRIG subcategory relied upon, whether the alleged organization is designated or undesignated, the general time period of alleged conduct, and whether the Government

COMPLAINT
Case No: 2:26-cv-00080      Page 18 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218

      contends Plaintiff knew or should have known of the alleged terrorist activity; and (b) afforded Plaintiff a meaningful opportunity to respond, including the opportunity to submit evidence and argument;

G. Award Plaintiff her reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

93. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 8th day of January 2026.

By:

    s/ Jay Gairson
    Jay Gairson, WSBA No. 43365
    **Gairson Law, LLC**
    4606 Martin Luther King Jr Way S
    Seattle, Washington 98108
    (206) 357-4218
    jay@gairson.com

    *Attorney for Plaintiff Jane Doe*

COMPLAINT
Case No: 2:26-cv-00080
Page 19 of 19

GAIRSON LAW, LLC
4606 MLK Jr Wy S
Seattle, WA 98108
(206) 357-4218